UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE LEA DERDERIAN, on behalf of herself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC. DBA CHECK N' GO,<br><br>Defendant. | Civil No. 14-cv-412-L (KSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF No. 17]; DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT [ECF No. 25]; DIRECTING ENTRY OF JUDGMENT** |

On January 23, 2014, Plaintiff Jamie Lea Derderian commenced this action against Defendant Southwestern & Pacific Specialty Finance, Inc. dba Check n' Go. Plaintiff alleges violations of the Fair Credit Reporting Act based on Defendant's alleged failure to extend Plaintiff firm offers of credit after Defendant allegedly obtained Plaintiff's consumer report. Plaintiff also seeks to represent a class of similarly situated plaintiffs.

On June 20, 2014, Defendant moved for summary judgment. On July 26, 2014, Plaintiff moved for leave to file a First Amended Complaint. Both motions have been fully briefed and are considered on the papers submitted without oral arguments in accordance with Civil Local Rule 7.1(d.1). For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for leave to file a First Amended Complaint.

/ / /

## I.   BACKGROUND

Plaintiff Jamie Lea Derderian ("Derderian") is a resident of the State of California. (Compl. ¶ 1.) Defendant Southwestern & Pacific Specialty Finance, Inc. dba Check n' Go ("Southwestern") is an Ohio corporation that does business in California, but has not designated a principal place of business in California. (Answer ¶ 2.)

On September 15, 2012 and March 15, 2013, Southwestern obtained Derderian's consumer report.[1] (Plf.'s Opp'n. Exhs. 1, 2.; Def.'s MSJ Ps&As at 4.) Derderian claims Southwestern never made her a firm offer of credit after receiving either of the above consumer reports. (Compl. ¶¶ 21, 22; Plf.'s Opp'n at 1.) Southwestern asserts it extended firm offers of credit to Derderian after obtaining her consumer report in both instances in the form of mailers sent in December 2012 and May 2013, respectively. (Def.'s MSJ Ps&As at 4.)

On January 23, 2014, Derderian filed a complaint in the Superior Court of the State of California, in and for the County of San Diego alleging a single cause of action: violation of the Fair Credit and Reporting Act ("FCRA") on the grounds that: 1) Southwestern failed to extend her firm offers of credit after obtaining her credit at the above dates, and 2) Southwestern failed to extend firm offers of credit to members of the proposed class within thirty days of obtaining their consumer reports.[2] (Compl. ¶¶ 20-22.) Derderian asserts Southwestern owes her and the proposed class members $1,000 for each violation of the FCRA as well as punitive damages under 15 USC Section 1681n. (Compl. ¶¶ 23, 26.) On February 24, 2014, Southwestern removed the case to this Court. (Def.'s Notice of Removal.)

Currently pending are Southwestern's motion for summary judgment and Derderian's motion for leave to file a First Amended Complaint.

---

[1] The parties submitted a Joint Statement of Undisputed Facts regarding Southwestern's motion for summary judgment, whereby the parties agreed that Southwestern made promotional inquiries of Derderian's consumer report on September 15, 2012 and March 15, 2013. *See* Joint Statement of Undisputed Facts Regarding Southwestern's Mot. Summ. J.

[2] Derderian attempts in her opposition to allege an additional failure on Southwestern's part to extend a firm offer of credit in her Opposition, but the Court will not address this allegation as part of the summary judgment motion because it was not alleged in her initial Complaint. *See* Plf.'s Opp'n at 1:2-12.

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary adjudication is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When "the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)).

It is well settled that, "[w]hen the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993)(per curiam); *see also United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011); *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1059 (9th Cir. 2005) (discussing the "longstanding precedent that conclusory declarations are insufficient to raise a question of material fact"). "Summary judgment requires facts, not simply unsupported denials or rank speculation." *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009); *see also*

*Fed. Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1159 (9th Cir. 2010); *Batz v. Am. Commercial Sec. Servs.*, 776 F. Supp. 2d 1087, 1097-98 (C.D. Cal. 2011). Moreover, the court need not find "a 'genuine issue' where the only evidence presented is 'uncorroborated and self serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

In considering evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See TW Electric*, 8-9 F.2d at 630-31 (citing *Matsushita*, 475 U.S. 574).

On a motion for summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, so long as the requirements of Federal Rule of Civil Procedure 56 are met. *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (citation omitted). Affidavits or declarations used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(c)(4). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**B.     AMENDING THE COMPLAINT**

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been served, a party may amend its complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires," and apply this policy with "extreme liberality." *Id.*; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). However, leave to amend is not to be granted automatically. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)). Granting leave to amend rests in the sound discretion of the district court. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996).

The Court considers five factors in assessing a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing amendment bears the burden of showing any of the factors above. *See DCD Programs*, 833 F.2d at 186. Of these factors, prejudice to the opposing party carries the greatest weight. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, absent prejudice, a strong showing of the other factors may support denying leave to amend. *See id.*

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futility is a measure of the amendment's legal sufficiency. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Thus, the test of futility is identical to the one applied when considering challenges under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978); *see Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend . . . where the amended complaint would be subject to dismissal." (citation omitted)).

## III.   DISCUSSION

### A.   SOUTHWESTERN'S MOTION FOR SUMMARY JUDGMENT

Southwestern contends it is entitled to summary judgment on Derderian's claim for violation of the FCRA for the following reasons: (1) Southwestern complied with the FCRA, (2) the FCRA does not impose any time requirement regarding extending firm offers of credit after obtaining a consumer report, and (3) Southwestern's interpretation of the FCRA is not objectively unreasonable. Derderian maintains that Southwestern did not comply with the FCRA but does not directly address Southwestern's assertions that the FCRA does not impose a time requirement or that Southwestern's interpretation of the FCRA is not objectively unreasonable.

### 1.     Compliance with the FCRA

Southwestern claims it is entitled to summary judgment because it complied with the FCRA. Under the FCRA, any consumer reporting agency may furnish an individual's consumer report with the individual's written consent or for certain "permissible purposes." 15 U.S.C. § 1681b(a), (c), (f). One such permissible purpose is to extend a firm offer of credit to a consumer. 15 U.S.C. § 1681b(c)(1)(B)(i). A firm offer of credit is "any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer . . ." 15 U.S.C. § 1681a(l).

The FCRA permits a lender to make "promotional inquiries" where the lender "identifies criteria bearing on an individual's creditworthiness and submits a request to a credit reporting agency to compile a list of consumers whose credit reports meet those criteria." *Banga v. Chevron U.S.A.*, Inc., No. C-11-01498, 2013 WL 71772, at *11 (N.D. Cal. Jan. 7, 2013). The lender then uses this list "to solicit consumers by extending firm offers of credit, often in the form of advertisements or fliers." *Id.*

Southwestern asserts that it complied with the FCRA because it obtained Derderian's credit for the permissible purpose of extending a firm offer of credit, and sent Derderian a firm offer of credit after each of the times Southwestern obtained her consumer report on September 15, 2012 and March 15, 2013. (Def.'s MSJ Ps&As at 2:26-3:5, 4:18-25; Decl. Yanjue Li ¶¶ 4-5, 10-11.)

To support this assertion, Southwestern provided a declaration by Yanjue Li ("Li"), a senior analyst at Axcess Financial Services, Inc. ("Axcess"). Axcess handles certain marketing and back-office support services for products offered by Southwestern. (Decl. Yanjue Li ¶ 1.) With respect to Derderian's September 15, 2012 consumer report, Li stated that Axcess's records show Derderian was "on a list of individuals whose consumer reports were obtained by Axcess as part of a prescreening process and who were sent mailers as part of a holiday campaign in December 2012" for the purpose of making a firm offer of credit. (*Id.* ¶¶ 3-5.) Axcess used a third-party mail house, Tri-Win Outsourcing, Inc. ("Tri-Win"), who printed and

mailed Derderian a firm offer of credit in the form of a post card. (*Id.* ¶¶ 6-7; Def.'s MSJ Ps&As at 4.) With respect to Derderian's March 15, 2013 consumer report, Li stated Axcess's records showed Derderian was "on a list of individuals whose consumer reports were obtained by Axcess as part of a prescreening process and who were sent mailers in May of 2013" for the purpose of making a firm offer of credit. (Decl. Yanjue Li ¶¶ 9-11; .) Axcess again used Tri-Win to print and mail Derderian a firm offer of credit in the form of a "snap pak." (*Id.* ¶¶ 12-13; Def.'s MSJ Ps&As at 4.)

Southwestern also provided an exemplar of the postcard mailer it sent Derderian after it received her consumer report on September 15, 2012 and an exemplar of the "snap pak" mailer it sent Derderian after it received her consumer report on March 15, 2013.[3] (Def.'s Exhs. A, B.) In both the postcard and "snap pak" mailers, Southwestern informs the recipient that he or she has been "pre-selected" for a loan and gives instructions on how to apply for the loan. (*Id.*)

In her opposition to summary judgment, Derderian stated "she does not believe she ever received a firm offer of credit from [Southwestern]." (Plf.'s Opp'n at 1:20-22.) In her declaration in opposition to summary judgment, Derderian stated she reviewed the exemplars of the post card and "snap pak" from Defendant's Exhibits A and B, but "do[es] not recall receiving those offers." (Derderian Decl. ¶ 5.) Derderian does not offer any other evidence that Southwestern failed to extend her a firm offer of credit after it obtained her consumer report on September 15, 2012 and March 15, 2013. Instead, Derderian attacks the evidence Southwestern provided as inadmissible on various grounds.[4] (Plf.'s Opp'n at 5-10.)

The Court finds Derderian has failed to produce evidence of material facts to show there is a genuine issue for trial for three reasons. First, as discussed above, it is well settled that, "[w]hen the non-moving party relies only on its own affidavits to oppose summary judgment, it

---

[3] Southwestern implies Axcess and Tri-Win's are agents of Southwestern and that it authorized Axcess and Tri-Win to act on its behalf in obtaining the consumer reports and printing and mailing the firm offers of credit. *See* Def.'s MSJ Ps&As at 4:18-25; Decl. Yanjue Li.

[4] Derderian argues Li's declaration lacks foundation, is inadmissible hearsay, does not fall under the business records exception, and that Southwestern's exemplars of offers in its Exhibits A and B violate the Best Evidence Rule. *See* Plf.'s Opp'n at 5-10.

cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen*, 7 F.3d at 138 (per curiam); *see also Head*, 413 F.3d at 1059 (discussing the "longstanding precedent that conclusory declarations are insufficient to raise a question of material fact"). "Summary judgment requires facts, not simply unsupported denials or rank speculation." *McSherry*, 584 F.3d at 1138; *see also Neovi, Inc.*, 604 F.3d at 1159. Thus, Derderian's declaration that she does not believe or recall receiving a firm offer of credit from Southwestern on its own is insufficient to raise an issue of material fact. *See McSherry*, 584 F.3d at 1138.

Second, Derderian improperly focused on contesting the *form* in which Southwestern presented its evidence, rather than providing her own refuting evidence or disputing the *contents* of the evidence. As discussed above, on a motion for summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, so long as the requirements of Federal Rule of Civil Procedure 56 are met. *See Fraser*, 342 F.3d at 1036–37 (citation omitted). Affidavits or declarations used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(c)(4).

Southwestern provided a declaration by one of its agents or employees, Yanjue Li. Li declared the statements were "based upon my own personal knowledge" or "upon a review of business records that are kept in the course of a regularly conducted business activity and were prepared as a regular practice and customer." (Decl. Yanjue Li. ¶ 2.) Li further declared that "[i]f called as a witness, I will be able to testify competently to such facts." (*Id.*) Therefore, the Court finds Southwestern's evidence admissible for the limited purpose of this summary judgment determination.

Third, Derderian has not provided sufficient evidence that she did not receive Southwestern's firm offers of credit. Federal courts apply "the mailbox rule." *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001). Under the mailbox rule, the proper and timely mailing of a document raises a rebuttable presumption that the document was delivered to the addressee at the usual time. *See Banga*, 2013 WL 71772, at

*12 (citing *Schikore*, 269 F.3d at 961). The mailbox rule is a settled feature of federal common law. *Id.* (citing *Hagner v. United States*, 285 U.S. 427, 430 (1932)). A court must determine whether the sender has presented sufficient evidence of mailing to invoke the presumption of receipt. *See Banga*, 2013 WL 71772, at *12 (citing *Schikore*, 269 F.3d at 963). "If the sender invokes the presumption, the putative recipient must present sufficient evidence of non-receipt to rebut the presumption." *Id.*

In effect, the presumption of receipt "resolves the 'swearing contest' where one party claims to have mailed a document and the other party claims it does not have the document." *Id.* (citing *Schikore*, 269 F.3d at 963). "[T]he presumption of mailing can only be rebutted by actual evidence of non-receipt." *Id.* (citing *Chavez v. Bank of America*, No. C 10-653, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011)).

Southwestern provided evidence it is its business practice to engage third-parties to print and mail its firm offers of credit to consumers after obtaining consumer reports. (*See* Decl. Yanjue Li.) Southwestern also provided evidence that firm offers of credit were mailed to Derderian following receipt of her consumer report. (*See id;* Def.'s Exhs. A, B.) Derderian has not provided any evidence of non-receipt; she has only stated she "does not believe" or "does not recall" receiving the offers. (Plf.'s Opp'n at 1; Derderian Decl. ¶ 5.) In light of this evidence, the Court finds Southwestern provided sufficient evidence that it mailed firm offers of credit to Derderian to support a presumption that Derderian received the offers, and that Derderian failed to rebut this presumption. *See Banga*, 2013 WL 71772, at *12 (citing *Schikore*, 269 F.3d at 963).

Thus, the Court finds that Southwestern complied with the FCRA insofar as it provided sufficient evidence to show that it extended Derderian firm offers of credit after it obtained her consumer reports.

**2.     FCRA lacks a time requirement for extending firm offers of credit**

Southwestern further contends that it is entitled to summary judgment because the FCRA does not impose any time requirement for extending offers of credit and Derderian's case turns on whether there is such a time requirement.

After reviewing the relevant portions of the FCRA, the Court finds the FCRA does not contain a specific time requirement for extending offers of credit after obtaining consumer reports. Simply put, nowhere in the FCRA did Congress expressly or impliedly include a time provision for extending an offer of credit after obtaining consumer reports for that purpose. On the other hand, Congress did impose other specific requirements, including time requirements, in other portions of the FCRA with respect to extensions of firm offers of credit. For example, the FCRA dictates the type of information a creditor may obtain when someone requests a consumer report to make a firm offer of credit. *See* 15 U.S.C. § 1681b(c)(2). Additionally, the FCRA requires lenders maintain files on criteria used to select consumers to receive promotional offers of credit for three years from the date of the offer. *See* 15 U.S.C. § 1681m(d)(3).

Southwestern also presented evidence of other courts that have rejected parties' attempts to read in additional requirements to the FCRA. Specifically, the First Circuit found "Congress's choice to omit from the FCRA any requirement for the inclusion of loan terms is properly interpreted to mean that Congress did not intend to require any such terms." *Dixon v. Shamrock Fin. Corp.*, 522 F.3d 76, 81 (1st Cir. 2008). Other district courts have also found that the express inclusion of some requirements implies the exclusion of others. *See Farrow v. Capital One Auto Finance, Inc.*, No. CCB-06-2324, 2007 WL 4707634, at *3 (D. Md. Nov. 9, 2007) ("Because FCRA lists other required disclosures in § 1681m(d), under the statutory canon *inclusio unius est exclusio alterius*, "courts should not imply any additional disclosure requirements'" (citing *Phinn v. Capital One Auto Finance, Inc.*, 502 F.Supp. 2d 625, 629 (E.D. Mich. 2007)).

Derderian does not deny that the FCRA does not include a specific time requirement for making offers of credit after obtaining consumer reports. Instead, Derderian argues that, if Southwestern sent firm offers of credit, Southwestern unreasonably delayed sending them. (Plf.'s Opp'n at 13:15-18.) Derderian does not offer any case law or other support for this contention and relies on her own interpretation of the FCRA to conclude that "the question is whether a reasonable jury could find that a firm offer of credit was not made in connection with the obtaining of a credit report because of a 107 day delay between the two event." (*Id.* at 14:8-

12.) Derderian has failed to provide any fact sufficient to raise a triable issue of material fact.[5] *See T.W. Elec. Service, Inc.,* 809 F.2d at 630 (citing *Celotex Corp.,* 477 U.S. 317).

Therefore, the Court finds the FCRA does not impose any time requirement for extending offers of credit after obtaining consumer reports.

### 3.  Southwestern's interpretation of the the FCRA is not objectively unreasonable

Finally, Southwestern maintains that it is entitled to summary judgment because its interpretation of the FCRA is not objectively unreasonable and therefore Derderian has no cause of action.

Derderian's complaint is based on allegedly willful violations of 15 U.S.C. Section 1681n. (*See* Compl. ¶ 25.) "Penalties under § 1681n depend on a violation being 'willful.'" *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 489 (7th Cir. 2012). Both parties agree that willfulness may be proven by showing a "reckless disregard" of statutory duty. *See Banga*, 2013 WL 71772, at *11 (citing *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 56-60 (2007)). Under *Safeco*, a company does not act with "reckless disregard" of statutory duty unless it acted in accordance with an objectively unreasonable reading of the statute. *See* 551 U.S. at 50.

Southwestern presents case law that suggests that courts may consider the text of the FCRA or "guidance from other courts of appeal of the Federal Trade Commission" to determine whether a reading was objectively reasonable. *See Banga*, 2013 WL 71772, at *4 (citing *Safeco*, 551 U.S. at 70 (2007)). In *Banga*, the court found a plain reading of the FCRA did not prohibit a creditor from obtaining a former customer's consumer report because "the text of the FCRA does not distinguish between closed and open accounts." *Id.* at *5. Southwestern asserts that the Court should similarly find that a plain reading of the FCRA does not impose the time requirement Derderian implies is in the statute. (Def.'s MSJ Ps&As at 8.)

---

[5] Derderian asks the Court to find a triable issue of fact for violation of the FCRA because Southwestern did not send a firm offer of credit within thirty days of obtaining Derderian's credit. See Compl.. ¶ 25. The Court declines this invitation because the FCRA does not impose any time requirement, much less the thirty days Derederian suggests.

Derderian has not presented any circuit authority demonstrating it is objectively unreasonable to interpret the FCRA as not having a time requirement for extensions of credit after obtaining a consumer report. Instead, Derderian improperly raises a different interpretation issue, claiming "it is not clear what Defendant's interpretation of the 'in connection' language is." (Plf.'s Opp'n 20:19-20.) Derderian also failed to present any circuit authority to demonstrate that this claim has any merit.

The Court finds that a plain reading of the FCRA supports an interpretation that there is no time requirement for extending firm offers of credit after obtaining a consumer report. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform to its intent. It is beyond [the Court's] province to rescue Congress from drafting errors. . [.]" Thus, the Court finds Southwestern's interpretation of the statute was not objectively unreasonable. *See Banga*, 2013 WL 71772, at *4 (citing *Safeco*, 551 U.S. at 70 (2007).

Based on the foregoing, defendant's motion for summary judgment is **GRANTED**.

### B. DERDERIAN'S MOTION TO FILE A FIRST AMENDED COMPLAINT

Derderian asks the Court to grant her leave to file an FAC to include 1) an additional instance that Southwestern allegedly obtained her consumer report and 2) an additional claim of alleged violations of the California Unfair Competition Law ("UCL"). Southwestern opposes on the grounds that the attempted amendments are made in bad faith with a dilatory motive and would be futile and prejudicial to Southwestern.

As discussed above, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin*, 59 F.3d at 845. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214. "A district court does not err in denying leave to amend . . . where the amended complaint would be subject to dismissal." Saul, 928 F.2d at 843 (citation omitted).

The UCL prohibits persons from engaging in "unfair competition." *See* CAL. BUS. &

PROF. CODE §§ 17200 et. seq. "Unfair competition" includes any unlawful, unfair, or fraudulent business act or practice. *See id.* § 17200. The unlawful business practices prohibited by Section 17200 are "any business practices forbidden by law, be it civil or criminal, federal or state, or municipal, statutory, regulatory, or court-made." *Subhani v. JPMorgan Chase Bank, Nat. Ass'n*, No. C 12-01857, 2012 WL 1980416, at *6 (N.D. Cal. June 1, 2012) (citing *Saunders v. Superior Court*, 27 Cal. App.4th 832, 838-39 (1994)). Thus, Section 17200 effectively "borrows" violations of other laws and treats them as unlawful business practices that are independently actionable under it. *See id.* A defendant cannot be liable under Section 17200 for conducting an unlawful business practice without first violating another law. *See id.*

For the reasons stated earlier, the Court grants Southwestern's motion for summary judgment on Derderian's sole cause of action under the FCRA in her initial complaint. Therefore, amending Derderian's complaint to include additional allegations of violations of the UCL would be futile because Derderian does not have a valid UCL claim without a valid underlying claim of an unlawful business practice. *See Miller*, 845 F.2d at 214. A UCL claim requires a violation of another law before a plaintiff may invoke it as an additional cause of action. *See Subhani*, 2012 WL 1980416, at *6.

Derderian has also requested the Court permit her to amend her complaint to include an additional allegation that Southwestern improperly accessed her consumer report on May 31, 2012. The Court denies Derderian's request for the following reasons:

First, in her opposition to summary judgment, Derderian provided a copy of her consumer report as evidence that Southwestern accessed her consumer report on September 15, 2012. (*See* Plf.'s Ex. 1.) Derderian requested this consumer report on April 4, 2013. (*See id.*) The consumer report expressly lists the dates Southwestern made promotional inquiries of Derderian's consumer report: September 15, 2012 and May 31, 2012. (*See id.*) Thus, the Court finds that on or about April 4, 2013, Derderian knew Southwestern had accessed her consumer report on May 31, 2012 and failed to allege this instance when she filed her complaint on January 23, 2014.

Second, Derderian could have amended her complaint to include the May 2012 inquiry at any time during the six months prior to Southwestern's motion for summary judgment, but did

not do so until after Southwestern's motion. The timing of Derderian's request to amend is suspect and the Court finds Derderian has acted in bad faith or with dilatory motive.

Third, both parties have expended time and resources litigating the two promotional inquiries alleged in Derderian's initial complaint. The Court declines to allow Derderian to amend her complaint to include the May 2012 inquiry at this time because it would cause undue delay and prejudice Southwestern.

Last, Derderian has not provided any explanation for why she did not include the May 2012 inquiry in her initial complaint or why she did not amend her complaint to include it prior to Southwestern's motion for summary judgment.

For all of these reasons, the Court finds the *Foman* factors weigh in favor of Southwestern and against Derderian. *See Foman*, 371 U.S. at 182. Accordingly, the Court denies Derderian's request to file a FAC for both the UCL claim and the May 2012 inquiry.

### IV.  CONCLUSION

For the reasons set forth above, **IT IS ORDERED** as follows**:**

1. Southwestern's motion for summary judgment is **GRANTED**;
2. Derderian's motion for leave to file a First Amended Complaint is **DENIED**;
3. The Clerk of the Court is directed to enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED: December 8, 2014

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL